FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 10, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOSHUA JAMES F.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:18-CV-03114-JTR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 12, 13. Attorney D. James Tree represents Joshua James F. (Plaintiff); Special Assistant United States Attorney Michael Sinclair Howard represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On February 17, 2015, Plaintiff filed an application for a period of disability and Disability Insurance Benefits, Tr. 15, 195-201, and an application for Supplemental Security Income benefits, Tr. 15, 202-209. Plaintiff alleged a disability onset date of August 31, 2013, Tr. 15, 202, 220, due to Anxiety, Bilateral Hand and Finger Numbness, Herniated Discs Neck and Back, Spinal Stenosis/Bone Spurs, Left Shoulder Pain, Sleep Disturbance, Depression, and

Memory Loss. Tr. 224. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) M.J. Adams held a hearing on February 28, 2017, Tr. 37-57, and issued an unfavorable decision on May 17, 2017. Tr. 15-25. The Appeals Council denied review on April 16, 2018. Tr. 1-6. The ALJ's May 17, 2017, decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on June 29, 2018. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on November 16, 1977 and was 35 years old on the alleged disability onset date, August 31, 2013. Tr. 40, 220. Plaintiff has a General Education Diploma (GED). Tr. 40. He has worked as a bartender, deli manager, and food sales clerk. Tr. 20, 41-42.

Plaintiff's disability report indicates he stopped working because of his conditions on August 31, 2013. Tr. 224. He testified that he is unable to do any of his past jobs because of chronic pain, anxiety, and issues with his hands, shoulder, and neck. Tr. 20, 42, 250. Plaintiff reported that his back pain began when he was involved in a car accident in September 2005, and the pain has progressively gotten worse. Tr. 42, 426, 535, 648, 657, 706, 762. Plaintiff reported having upper and lower back pain since the car accident. Tr. 426. He reported a lot of stiffness and spasm in his back, and numbness and tingling in both legs. Tr. 426.

At the hearing, Plaintiff testified that he is unable to carry a 20-pound weight. Tr. 20, 43. He stated that doing so would exacerbate his pain and radicular symptoms. Tr. 20, 43. Plaintiff testified that numbness and pain prevent him from manipulating objects and closing his hands into a fist. Tr. 20, 43-44. He

stated that he has received injections in his neck but has not been referred for surgery. Tr. 20, 45-46.

Plaintiff also alleges that he has anxiety issues, major depression, and audio and visual hallucinations. Tr. 20, 47, 250. He testified that he has been battling depression since he was a teenager. Tr. 48. Plaintiff testified that he began taking medication a couple of years before the administrative hearing to help with pain and depression, and it seemed to help a little bit. Tr. 49. He also testified that he has anxiety attacks when around groups of people. Tr. 20, 49-50.

Plaintiff reported that he lives in a shelter or with friends when he can, and he sometimes lives with friends outside in a tent. Tr. 250, 657. Plaintiff has two children who are not in his custody. Tr. 426, 494, 516, 535, 653. He reported that he goes outside every day and tries to walk and stretch. Tr. 253, 494. He travels by walking, riding in a car, or using public transportation. Tr. 253. He reported that his hobbies are watching television, using the internet, reading books, and walking. Tr. 254, 494. Plaintiff reported that he attends church every week, but often has to leave early, and he attends Alcoholics Anonymous meetings. Tr. 254, 666.

Plaintiff reported being able to care for his hygiene needs, including taking regular baths and/or showers, brushing his teeth and combing his hair. Tr. 494. He generally takes his own medication and is able to renew his prescriptions as needed. Tr. 494. He typically schedules his own appointments with doctors or other offices. Tr. 494. Plaintiff reported that he prepares meals weekly with help. Tr. 252, 494. He reported that he shops in stores once or twice a month and tries to shop fast because it hurts and he has a lot of anxiety. Tr. 253, 494. He is able to perform household chores independently and whenever necessary, including washing dishes, doing laundry, vacuuming, and dusting. Tr. 494.

///

///

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the

claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On May 17, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, August 31, 2013. Tr. 17.

At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, obesity, affective disorder, and anxiety disorder. Tr. 17.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 17.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined that he could perform light work with the following limitations: he can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday; can occasionally climb ladders, ropes, or scaffolds, crouch, and stoop, and can frequently crawl; must avoid concentrated exposure to vibration, hazardous machinery, and unprotected heights; can understand, remember, and carry out simple instructions; can make judgments commensurate with the functions of unskilled work, i.e., work that needs little or no judgment to do simple duties and a person can usually learn to do in 30 days, and little specific vocational

preparation and judgment are needed; can respond appropriately to supervision, but should not be required to work in close coordination with co-workers where teamwork is required; can deal with occasional changes in the work environment; and can do work that requires no contact with the general public to perform the work tasks. Tr. 19.

At step four, the ALJ determined Plaintiff was not able to perform his past relevant work. Tr. 24.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert (VE), Plaintiff could perform other jobs present in significant numbers in the national economy, including the light exertion level jobs of cleaner, housekeeping; production assembler; and hand packager. Tr. 24-25. The ALJ thus concluded that Plaintiff was not under a disability within the meaning of the Social Security Act from August 31, 2013, through the date of the ALJ's decision, May 17, 2017. Tr. 25.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) improperly discrediting Plaintiff's symptom claims; and (2) failing to properly consider and weigh the opinion evidence. ECF No. 12 at 2.

## DISCUSSION[1]

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161

### A. Plaintiff's Symptom Testimony

Plaintiff contends the ALJ erred by improperly discrediting his symptom complaints. ECF No. 12 at 4-14. It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. In considering Plaintiff's symptoms, the ALJ must follow a two-step analysis. *Lingerfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether there is objective evidence of an underlying impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms. *Id.* at 1036 (quotation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*; citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "General findings are insufficient: rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found that Plaintiff's medically determinable impairments could possibly produce the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the objective medical and other evidence. Tr. 20. The ALJ recounted the following reasons for discrediting Plaintiff's symptom testimony: (i) inconsistencies with the medical evidence; (ii) inconsistencies with Plaintiff's activities of daily living; and (iii) Plaintiff engaged in negative impression management during a benefits evaluation. Tr. 20-22. The ALJ provided specific examples of each. *Id*.

///

---

n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

### 1. Inconsistent with Medical Evidence

The ALJ found that the medical evidence in the record did not substantiate Plaintiff's allegations of disabling symptoms. Tr. 20-21. An ALJ may, with clear and convincing reasons, discount the claimant's statements if not fully supported by objective evidence. *Carmickle*, 533 F.3d at 1160. These reasons need only be supported by substantial evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Id.*, citing 20 C.F.R. 404.1529(c)(2).

Plaintiff alleged that his ability to use his hands was severely limited. Tr. 21, 43-44. He testified that he could not reasonably lift or carry a 20-pound weight. Tr. 43. However, the ALJ determined that the medical evidence in the record did not support the level of impairment alleged. Tr. 20-21; *see, e.g.*, Tr. 745-46 (Plaintiff reported in August 2015 that he could lift up to 20 to 30 pounds, stand up to 60 minutes, sit for up to 60 minutes, and walk up to half a mile); Tr. 746 (examination found normal lumbar flexion but limited extension and lateral flexion); Tr. 613, 620, 633; 711-12 (examinations in October 2015, July and October 2016, and January 2017 found intact upper and lower extremity strength, sensation, and reflexes).

Plaintiff reported severe back and neck pain. Tr. 21, 454-56. However, the ALJ found that the record evidence conflicted with Plaintiff's assertion that his back and neck pain limited his ability to walk and move around. Tr. 21. Examination showed that Plaintiff moved easily and had normal muscle bulk and tone. Tr. 456. In April 2016, Plaintiff had limited lumbar range of motion, but otherwise showed normal gait and good mobility. Tr. 728, 735. An examination in January 2017 found that Plaintiff ambulated without assistance, had intact shoulder range of motion, and no muscle atrophy. Tr. 711-12.

The ALJ acknowledged that the record included findings of tenderness to palpation of Plaintiff's cervical and lumbar spine, Tr. 21 (citing Tr. 613, 620. 633), and a nerve conduction velocity (NCV) study in January 2016 revealed findings consistent with mid-cervical spine nerve irritation and mild carpal tunnel syndrome, Tr. 21 (citing Tr. 765-67). However, the ALJ found that these mild to moderate findings did not outweigh the numerous findings in the record showing that Plaintiff's symptoms were not as limiting as he alleged. Tr. 21. The ALJ noted that objective medical findings, including imaging studies, were inconsistent with Plaintiff's allegations of disability. Tr. 21; *see, e.g.*, Tr. 531 (April 2015: MRI scan showed a lumbar disc herniation and degeneration at two levels but no nerve root impingement); Tr. 570 (April 2015: x-ray showed mild arthritic changes in Plaintiff's neck); Tr. 613 (October 2016: straight leg raising tests were negative); Tr. 711-12 (November 2016: MRI scan showed mild to moderate degeneration and stenosis of the cervical spine).

Plaintiff alleged that his depression and anxiety symptoms limited his ability to concentrate and be around others. Tr. 21, 49, 254-55. However, the ALJ determined that the record failed to show that Plaintiff's symptoms would prevent him from working within the parameters of the residual functional capacity. Tr. 21-22; *see, e.g.*, Tr. 456 (November 2014: Plaintiff showed normal memory and judgment and normal mood and affect); Tr. 516 (March 2015: Plaintiff reported episodic anxiety and depression due to his living situation, and examination noted mild symptoms); Tr. 653-55 (March 2016: Plaintiff reported problems with impaired concentration, low interest, and low energy with racing thoughts, but mental status examination was within normal limits, with adequate attention and fair eye contact); Tr. 684, 687, 693, 698, 701, 704, 708 (records show that Plaintiff was pleasant and cooperative, normal psychomotor activity, normal speech, adequate attention in March, April, May, June, July, August, October 2016, despite

his reports of irritability, paranoia, and hallucinations); Tr. 681 (December 2016: Plaintiff showed adequate attention, fair eye contact, and normal speech).

Plaintiff reported that audio hallucinations interfered with his ability to work. Tr. 250. However, as determined by the ALJ, the record contained only sporadic reports of these symptoms and did not indicate that hallucinations compromised his functioning. Tr. 22. In March 2014, Plaintiff denied disturbing thoughts, memory loss, nervousness, hallucinations, psychiatric disorders, and excessive stress. Tr. 479. In April 2015, Plaintiff did not report hallucinations when seeking treatment for mental symptoms. Tr. 555. In a Patient Health Questionnaire completed in April 2015, Plaintiff denied problems with concentration, getting along with others, or difficulty working, Tr. 556, and he showed appropriate mood and affect, as well as normal memory, Tr. 559.

The ALJ reasonably concluded, based on this record, that the medical evidence did not support the level of impairment alleged by Plaintiff. Tr. 20-21. This was a proper basis for the ALJ to discredit Plaintiff's symptom testimony. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Rollins*, 261 F.3d at 857.

### 2. Inconsistent with Activities of Daily Living

As determined by the ALJ, Plaintiff has shown that he is able to engage in a variety of activities that are inconsistent with his alleged limitations. Tr. 22. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). While one does not need to be "utterly incapacitated" to be disabled, *id.*, it was proper for the ALJ to find Plaintiff's reports of activities (ability to go on walks, use public transportation, read "a lot," attend church and Alcoholics Anonymous meetings, wash dishes, do laundry, vacuum, clean, and grocery shop, Tr. 253-54, 494), were inconsistent with the limitations Plaintiff alleged, and detracted from his overall credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's daily] activities suggest some difficulty functioning, they may

be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *see also Morgan*, 169 F.3d at 599-600, 603 (affirming the ALJ's adverse determination regarding symptom testimony and noting that evidence of the claimant's daily activities, such as the ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child, served as evidence of his ability to work); *Rollins*, 261 F.3d at 857 (affirming the ALJ's adverse determination regarding symptom testimony and noting that the claimant's allegation of disability was undermined by testimony about her daily activities, such as attending to the needs of her two young children, cooking, and shopping).

### 3. Negative Impression Management

The ALJ found that the evidence suggested Plaintiff engaged in negative impression management during a benefits evaluation, which called into question the veracity of his allegations. Tr. 22. The tendency to exaggerate provides a permissible reason for discounting a claimant's reported symptoms. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (the ALJ appropriately considered the claimant's tendency to exaggerate when assessing the claimant's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work.).

During a February 2015 Department of Social and Health Services (DSHS) benefits evaluation conducted by psychologist Dr. Genthe, Plaintiff showed "subtle suggestions that [he] attempted to portray himself in a negative or pathological manner in particular areas." Tr. 499. Dr. Genthe also noted "[s]ome concern about distortion of the clinical picture must be raised as a result; [Plaintiff] presents with certain patterns or combinations of features that are unusual or atypical in clinical populations but relatively common among individuals feigning mental

disorder." Tr. 499. The ALJ found that this observation diminished the persuasiveness of Plaintiff's allegations. Tr. 22.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 399-400 (1971). The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's symptom allegations were not entirely credible in this case.

**B.     Medical Source Opinions**

Plaintiff argues that the ALJ erred by improperly according more weight to the reviewing opinion of Dr. Ignacio than treating provider Dr. Crank regarding Plaintiff's physical limitations, and by assigning more weight to the psychological reviewers than examining provider Dr. Genthe. ECF No. 12 at 14-21.

In weighing medical source opinions in a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: (i) treating physicians, who actually treat the claimant; (ii) examining physicians, who examine but do not treat the claimant; and (iii) non-examining physicians, who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An examining physician's opinion is given more weight than that of a non-examining physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. If the ALJ rejects a treating or examining physician's opinion that is

contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ is required to set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

### 1. Plaintiff's Physical Limitations

On April 2, 2015, treating physician Jeremiah Crank, M.D. completed a Physical Functional Evaluation and opined that Plaintiff was unable to meet the demands of sedentary work. Tr. 507-511. Dr. Crank diagnosed neck and low back pain, degenerative disc disease, concern about a herniated disc, and nerve compression. Tr. 508. He estimated the limitation on Plaintiff's work activities would persist with available medical treatment for 12 months. Tr. 509.

The ALJ assigned little weight to Dr. Crank's opinion. Tr. 23. The ALJ determined that Dr. Crank's own examination findings were out of proportion with the severe limitations that he attributed to Plaintiff. Tr. 23. This was a specific and legitimate reason to reject Dr. Crank's opinion regarding Plaintiff's limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the existence of internal inconsistencies within a physician's opinion constitutes a specific and legitimate reason for the ALJ to reject that physician's opinion concerning the claimant's functional limitations). The ALJ specifically cited Dr. Crank's range of motion testing which showed essentially intact back mobility and minor limitations of Plaintiff's neck movement. Tr. 23 (citing Tr. 574-75). The

ALJ also cited Dr. Crank's examination findings that Plaintiff exhibited normal upper and lower extremity strength and sensation. Tr. 23 (citing Tr. 580). These findings are inconsistent with Dr. Crank's opinion that Plaintiff's neck and back pain would prevent him from performing even sedentary work.

Further, the ALJ found Dr Crank's conclusion that Plaintiff had severe limitations with walking conflicted with Plaintiff's repeated reports that he spent time going on walks. Tr. 23 (citing Tr. 253-54, 494, 572). *See Morgan*, 169 F.3d at 600-02 (considering an inconsistency between a treating physician's opinion and a claimant's reported daily activities is a specific and legitimate reason to discount the treating physician's opinion). A review of the record reveals several reports by Plaintiff that he spends time going on walks, he walks as a method of transportation, and he tries to incorporate walks into his daily routine. *See* Tr. 253 (Plaintiff reported that he goes outside "everyday [to] try to walk and stretch"); Tr. 253 (Plaintiff reported that he travels by walking, using public transportation, and riding in a car); Tr. 494 (Plaintiff reported that his general activities include going for walks); Tr. 50 (Plaintiff testified that he tries to get out everyday and "at least try to walk a little bit"). These reports are inconsistent with Dr. Crank's opinion that Plaintiff has severe walking limitations. Tr. 572.

The Court finds the severe physical limitations assessed by Dr. Crank are inconsistent with his own examination findings and Plaintiff's reports that he spent time going on walks, and the ALJ provided specific and legitimate reasons, supported by substantial evidence, for according little weight to Dr. Crank's limitations.

On June 4, 2015, Olegario Ignacio, Jr., M.D. reviewed the record and opined that Plaintiff could perform light work with the additional restrictions stated in the residual functional capacity. Tr. 103-117.

The ALJ assigned great weight to Dr. Ignacio's opinion. Tr. 23. The ALJ found that Dr. Ignacio's assessment was consistent with the objective medical

evidence, the observations of treatment providers, and Plaintiff's reported activities. Tr. 23. The ALJ also noted that the evidence added to the record after Dr. Ignacio's review did not objectively establish the presence of more significant functional limitations. Tr. 23.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony, and resolve ambiguities, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), and this Court may not substitute its own judgment for that of the ALJ. 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision. *Fair*, 885 F.2d at 604.

### 2. Plaintiff's Mental Limitations

On February 25, 2015, examining psychologist Thomas Genthe, Ph.D., completed a Psychological/Psychiatric Evaluation. Tr. 493-501. Dr. Genthe concluded that Plaintiff presented with primary mental health claims as the reason for his current unemployment. Tr. 496. He opined that Plaintiff's psychological symptoms appeared to have considerably impacted his daily activities and level of functioning necessary to move forward and pursue gainful employment or continue his education. Tr. 496. Dr. Genthe found that Plaintiff's symptoms were not being managed at the time of the evaluation. Tr. 496. He recommended that Plaintiff be referred for a psychiatric consultation to review his regimen and dosages for effectiveness. Tr. 496. He also recommended a referral for individual counseling services in attempts to target recent familial issues and psychosocial stressors that appeared to be contributing to Plaintiff's current level of distress. Tr. 496.

Dr. Genthe assessed Plaintiff's ability to interact appropriately with the public in everyday situations as fair. Tr. 496. His ability to get along with coworkers and/or peers was assessed as poor. Tr. 496. His ability to respond appropriately to criticism from supervisors was assessed as poor. Tr. 496.

Plaintiff's prognosis was viewed as guarded. Tr. 496. Dr. Genthe determined that, at the time of the evaluation, Plaintiff was unlikely to function adequately in a work setting until his psychological symptoms had been managed more effectively. Tr. 496. He noted that, given Plaintiff's response to treatment and willing participation, a period of six to nine months may likely be sufficient to address his treatment needs at least moderately well, and help him regain the necessary emotional functioning to resume fulltime work-related activities. Tr. 496.

The ALJ gave little weight to Dr. Genthe's opinion. Tr. 23. The ALJ determined that the limitations set forth by Dr. Genthe: (i) were inconsistent with the medical evidence of record; (ii) were inconsistent with Dr Genthe's own observations; (iii) relied heavily on Plaintiff's subjective reports; and (iv) were contradicted by Plaintiff's own allegations. Tr. 23.

In finding that Dr. Genthe's opinion was inconsistent with the medical evidence of record, the ALJ cited to the medical evidence discussed in the decision which showed that Plaintiff's symptoms were generally mild to moderate and did not cause marked functional limitations. Tr. 23. An ALJ may discredit a physician's opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. As discussed *supra*, Plaintiff's objective imaging and physical examinations yielded results that were consistent with the ALJ's RFC formulation. *See* Tr. 456 (November 2014: Plaintiff showed normal memory and judgment and normal mood and affect); Tr. 516 (March 2015: Plaintiff reported episodic anxiety and depression due to his living situation, and examination noted mild symptoms); Tr. 653-55 (March 2016: Plaintiff reported problems with impaired concentration, low interest, and low energy with racing thoughts, but mental status examination was within normal limits, with adequate attention and fair eye contact); Tr. 684, 687, 693, 698, 701, 704, 708 (records show that Plaintiff was pleasant and cooperative, normal psychomotor activity, normal speech, adequate attention in March, April, May, June, July, August, October 2016, despite his reports of

irritability, paranoia, and hallucinations); Tr. 681 (December 2016: Plaintiff showed adequate attention, fair eye contact, and normal speech); Tr. 479 (March 2014: Plaintiff denied disturbing thoughts, memory loss, nervousness, hallucinations, psychiatric disorders, and excessive stress). This inconsistency with the medical evidence was a specific and legitimate reason to discredit Dr. Genthe's opinion.

Further, the ALJ found that Dr. Genthe's opinion was inconsistent with his own observations. Tr. 23 (citing Tr. 497-98). The existence of internal inconsistencies within a physician's opinion constitutes a specific and legitimate reason for the ALJ to reject that physician's opinion concerning the claimant's functional limitations. *Tommasetti*, 533 F.3d at 1041. The ALJ specifically cited Dr. Genthe's examination of Plaintiff, which showed normal mental status and normal behavior. Tr. 23 (citing Tr. 497-98). Dr. Genthe's assessed marked difficulties with completing a normal work day and work week without interruption and with maintaining appropriate workplace behavior were thus inconsistent with his own examination findings. This was a specific and legitimate reason to reject Dr. Genthe's opinion regarding Plaintiff's limitations.

The ALJ determined that Dr. Genthe relied heavily on Plaintiff's subjective reports, which Dr. Genthe noted were not entirely reliable. Tr. 23 (citing Tr. 499). As discussed *supra*, the ALJ properly discounted Plaintiff's symptom testimony. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. A review of Dr. Genthe's Psychological/Psychiatric Evaluation reveals that it largely reflects Plaintiff's reports of limitations, with little independent analysis or diagnosis. Tr. 493-501. Reliance on Plaintiff's self-reported symptoms rather than the doctor's examination findings constituted a specific and legitimate reason for the ALJ to reject Dr. Genthe's opinion regarding Plaintiff's limitations.

Finally, the ALJ determined that some of Dr. Genthe's opinions, including his assertion that Plaintiff had poor ability to get along with co-workers and supervisors, were contradicted by Plaintiff's own allegations. Tr. 23 (citing Tr. 255, 496). As discussed *supra*, an ALJ may reject limitations "unsupported by the record as a whole." *Batson*, 359 F.3d at 1195. In his Adult Function Report, Plaintiff reported that he had no problems getting along with family, friends, neighbors, or others, Tr. 255, but Dr. Genthe opined that Plaintiff's ability to get along with coworkers, peers, and to respond appropriately to criticism from supervisors was poor, Tr. 496. This constituted a specific and legitimate reason to discount Dr. Genthe's opinion about Plaintiff's poor ability to get along with co-workers and supervisors.

Overall, Dr. Genthe's assessment of Plaintiff was inconsistent with the record evidence, and the ALJ gave his opinions little weight. Tr. 23.

In April and June 2015, state agency mental health reviewers Thomas Clifford, Ph.D., and Renee Eisenhauer, Ph.D. completed mental health assessments. Tr. 23 (citing Tr. 60-72, 103-114). They found that Plaintiff could perform simple and well-learned complex tasks and had moderate limitations of his ability to interact with others. Tr. 23, 69, 112-13.

The ALJ accorded some weight to the opinions of the state agency mental health assessors. Tr. 23. The ALJ found that their opinions were generally consistent with the evidence of record, although the ALJ found that Plaintiff was limited to simple tasks and unskilled work. Tr. 23. The ALJ also determined the opinion that Plaintiff was "moderately limited" in various functional categories was vague and did not provide a specific functional limitation. Tr. 23, 68-69, 113.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony, and resolve ambiguities, *Saelee*, 94 F.3d at 522, and this Court may not substitute its own judgment for that of the ALJ. 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings justifying a decision, and those

findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision.  *Fair*, 885 F.2d at 604.

Having reviewed the ALJ's evaluation of the medical evidence, the Court finds the ALJ's interpretation was based on substantial evidence, and the ALJ supported the findings with specific and legitimate reasoning.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision should be affirmed.  Therefore, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED April 10, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE